## A99A1438. GREEN v. THE STATE.
### (523 SE2d 581)

MILLER, Judge.

A jury convicted Terry Green of possession of cocaine, possession of tools for the commission of a crime, and conspiracy to commit burglary. On appeal he asserts several enumerations of error including the denial of his motion to suppress the evidence. We affirm.

1. Green claims that the court should have suppressed evidence found in a vehicle in which he was a passenger because the police lacked reasonable suspicion to stop the vehicle. Because the parties have stipulated to the facts, our review is de novo.[1]

An officer may conduct a brief investigative stop of a vehicle if justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct.[2] To determine the existence of reasonable suspicion, we look at the totality of the circumstances.[3]

The unchallenged testimony of the officer at the scene was that at about 3:15 a.m., she noticed two U-haul trucks backed into the parking lot of a restaurant located next to a Wal-mart. One of the trucks had its lights off, and she observed several men walking around. She knew that the restaurant was closed and that the last employees left around 1:30 a.m. Mindful that there had been other burglaries in the area, she called a 911 dispatcher who informed her

---

[5] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[1] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).
[2] *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968).
[3] *Gonzalez v. State*, 235 Ga. App. 253, 254 (509 SE2d 144) (1998); *Evans v. State*, 183 Ga. App. 436, 438 (2) (359 SE2d 174) (1987).

that the emergency contact for the restaurant stated that no one should be at the building. When she decided to approach the trucks to investigate, they drove away and she followed, eventually stopping them.

Because the property owner informed police no one should be at the premises, the totality of the circumstances gave the officer reasonable suspicion to authorize a brief stop of the vehicles. The court did not err in denying Green's motion to suppress.

2. Green contends that the trial court erred by holding a hearing on preliminary matters in his absence and in the absence of his counsel. A motions hearing for Green and his co-defendants was held at 9:00 a.m., and Green did not appear. The court issued a bench warrant for Green and proceeded to hear motions from the co-defendants. Around 1:15 p.m., Green and his counsel appeared. Although a defendant has a constitutional right to be present at all stages of his trial,[4] Green's absence was voluntary and due to his own failure to appear. Once trial counsel and Green appeared, the court explained its rulings on the co-defendants' motions, noted that it had ruled on Green's motions in the earlier hearing, and offered to reiterate those rulings. Counsel declined the offer and did not object to the hearing on the co-defendants' motions held in her and her client's absence. By going forward with the proceedings without objection, Green and his trial counsel acquiesced to the hearing and cannot complain on appeal.[5]

3. In two enumerations, Green claims that the trial court erred in allowing the State to use a peremptory strike on an African-American venireperson and that the court removed itself from a position of impartiality by providing a race-neutral reason for the strike. To evaluate a *Batson*[6] motion on a peremptory strike, the trial court follows a three-step process.

> The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent.[7]

We defer to the trial court's findings as to whether the opponent of

---

[4] *Pennie v. State*, 271 Ga. 419, 420 (2) (520 SE2d 448) (1999); *Parker v. State*, 220 Ga. App. 303, 311 (12) (469 SE2d 410) (1996).

[5] See, e.g., id. at 312 (12); see generally *Harris v. State*, 234 Ga. App. 126, 128 (2) (505 SE2d 49) (1998) (this court will not consider on appeal issues not raised and preserved in the trial court).

[6] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[7] *Chandler v. State*, 266 Ga. 509, 510 (467 SE2d 562) (1996).

the strike has met the burden of persuasion and affirm them unless clearly erroneous.[8]

After Green raised a *Batson* objection, the court did not rule on whether Green made a prima facie showing of discrimination but instead directly asked for the State's race-neutral explanation for the strike. The State explained that the juror "had some very big problems with a police officer back in the early seventies. . . . She herself was arrested, she was an activist and she witnessed some African-Americans being arrested." The State further explained that the juror could not be fair and impartial because of her political activity, that the strike had nothing to do with her being African-American, and that "[i]f she was white and she had the same viewpoints and was politically active [he] would have the same problem with her serving on the jury . . . whatever color she is."

The court denied the motion, ruling that the State met its burden of showing race-neutral reasons for the strike. The contention that the court removed itself from a position of impartiality is without merit. The court simply reiterated the reasons given by the State for the strike. The court's ruling is supported by evidence and is not clearly erroneous.[9]

4. The indictment charging Green with the offense of conspiracy to commit burglary specifically alleged that Green "conspire[d] to commit the crime of [b]urglary of Wal-mart on Fairburn Road, and did go to the vicinity of Wal-mart with bolt cutters. . . ." But the court charged the jury that "[i]f you find that either or both of these defendants possessed tools for the commission of a crime that is an overt act upon which you would be authorized to convict as to the offense of conspiracy to commit burglary." Green contends that because the indictment alleged the offense with specificity, the court was obligated to charge the jury on the specific tool used and the specific overt act.

Absent a remedial instruction, reversible error occurs if the jury charge recites the statutory definition of a crime (which informs the jury the crime may be committed in various manners) when the indictment alleges that the crime occurred in a specific way.[10] If the jury charge is not cured, the conviction may be defective because of a fatal variance between the proof at trial and the indictment.[11] Here

---

[8] *Turner v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252) (1996); *Curry v. State*, 238 Ga. App. 511, 516 (2) (b) (519 SE2d 269) (1999).

[9] See *Dennis v. State*, 238 Ga. App. 343, 346 (4) (518 SE2d 745) (1999); *Haynes v. State*, 234 Ga. App. 272, 276 (5) (507 SE2d 151) (1998).

[10] *Hendrix v. State*, 230 Ga. App. 604, 606 (2) (497 SE2d 236) (1998).

[11] *Gilliam v. State*, 237 Ga. App. 476, 477 (1) (517 SE2d 348) (1999); *Hunley v. State*, 227 Ga. App. 234-235 (1) (488 SE2d 716) (1997); *Levin v. State*, 222 Ga. App. 123, 126-127 (6) (473 SE2d 582) (1996).

the evidence shows that the judge provided a remedial instruction by stating that the burden of proof is upon the State to prove every material allegation in the indictment. The court also provided the jury with the indictment for review during deliberation. The defect was cured.[12]

5. Green contends that the court should have excluded his tape-recorded interrogation because it contained hearsay statements made by detectives during questioning. Before playing the tape for the jury, the court redacted portions it considered to be inadmissible.

Even though the detectives' statements were hearsay, the failure to redact these statements is not reversible error for two reasons. First, both detectives who questioned Green were available for cross-examination, so his right to confront the witnesses was not foreclosed. Second, the court gave an in-depth curative instruction informing the jury that the detectives' statements were hearsay and could not be considered as evidence of the truth.[13] The court did not err in admitting the tape.

6. After deliberations began, the jury requested a definition of the word "tacitly" as given in the jury charge. The court provided the jury with the definition of "tacit" from Webster's dictionary. Green's claim that this is error is without merit. It is the court's duty to instruct on any point the jury requests and to do it in plain, clear language.[14] "Tacitly" is not defined in the charge, and the court did not abuse its discretion in providing the definition.[15]

7. A juror admitted that after the trial began, she drove to the area where the U-haul trucks were observed on the night of Green's arrest. Green contends he should be granted a new trial because the trial court allowed the juror to remain on the jury.

Jurors generally cannot impeach their own verdict,[16] and to set aside a jury verdict because of irregular juror conduct we must conclude that the conduct was so prejudicial that the verdict is inherently lacking in due process.[17] *Bobo v. State*[18] reversed a conviction

---

[12] See *Hendrix*, supra, 230 Ga. App. at 606 (2) (jury instruction confining elements to the material allegations of the indictment cured defect); see also *Green v. State*, 221 Ga. App. 694, 695 (2) (472 SE2d 457) (1996) (even though jury charge included that crime may be committed in more than one manner, the jury was given and wrote verdict on a copy of the indictment which alleged crime with specificity).

[13] Compare *Watson v. State*, 199 Ga. App. 825, 826 (1) (406 SE2d 509) (1991) (court carefully admonished jury that what others told officers is hearsay); cf. *Huckeba v. State*, 217 Ga. App. 472, 476-477 (5) (458 SE2d 131) (1995) (statements of officer were part of interrogation technique to elicit a response from defendant).

[14] *Kimmel v. State*, 261 Ga. 332, 334-335 (3) (404 SE2d 436) (1991).

[15] Compare *Levin*, supra, 222 Ga. App. at 127-128 (7).

[16] *Satterwhite v. State*, 235 Ga. App. 687, 688 (509 SE2d 97) (1998).

[17] *Butler v. State*, 270 Ga. 441, 444 (2) (511 SE2d 180) (1999).

[18] 254 Ga. 146 (1) (327 SE2d 208) (1985).

because two jurors visited the crime scene and attempted to sway other jurors by discussing their observations. The conduct in the present case does not rise to that level. The juror stated that her visit to the scene did not "clear anything up" for her and that she told the other jurors that she "went by and it didn't help." She was then asked if she could base her decision only on what she had seen and heard in the courtroom, and she responded affirmatively. The juror's conduct was not so prejudicial to deprive Green of due process.[19]

8. The claim that one juror admitted the verdict was not hers when polled is without merit. The court asked the juror, "was this your verdict when it was reached in the jury room," to which the juror responded, "[n]o, I had to review the law that you gave us[,] . . . [go] over the evidence . . . [a]nd I came to that conclusion." The juror was simply stating that she made her decision after deliberating, *not* that she made her decision after the verdict form was returned. Moreover, Green did not object or otherwise raise the issue during the polling of the juror or at the close of polling of all of the jurors, thereby waiving any objection to the court's reception of the verdict.[20]

9. Finally, Green contends that the trial court erred in failing to merge the possession of tools for commission of a crime conviction with the conspiracy to commit burglary conviction. "Under Georgia law, offenses merge and multiple punishment is prohibited if one offense is included in the other as a matter of law or fact."[21]

The elements of the crime of conspiracy are an agreement between two or more persons to commit a crime and an overt act by any one of those persons to effect the object of the conspiracy.[22] The elements of possession of tools for the commission of a crime are the possession of such tools and the intent to use them to commit a crime.[23] Neither crime is included in the other by definition, and they do not merge as a matter of law.[24]

But, Green's indictment alleged both offenses with specificity. The conspiracy count alleged that Green "conspire[d] to commit the crime of [b]urglary of Wal-mart on Fairburn Road, and did go to the vicinity of Wal-mart with bolt cutters . . . .," while the count on possession of tools for commission of a crime alleged that Green "did unlawfully have in [his] possession bolt cutters, a tool commonly

---

[19] See *Butler*, supra, 270 Ga. at 445 (2); *Brooks v. State*, 265 Ga. 548, 550 (5) (458 SE2d 349) (1995).

[20] See *Kimmel*, supra, 261 Ga. at 335 (4); *Jackson v. State*, 184 Ga. App. 123 (361 SE2d 14) (1987).

[21] (Citation omitted.) *Wells v. State*, 222 Ga. App. 587, 588 (3) (474 SE2d 764) (1996); see OCGA §§ 16-1-6 (1); 16-1-7 (a) (1).

[22] See OCGA § 16-4-8.

[23] See OCGA § 16-7-20.

[24] See OCGA § 16-1-7.

used in the commission of burglary with intent to make use of them in a burglary. . . ." To prove the conspiracy as alleged in the indictment, the State had to prove that Green was in the possession of the bolt cutters with criminal intent, which is the same proof needed for the possession of tools offense.[25] Thus, one conviction is included in the other. The possession of tools for the commission of a crime conviction merges with the conspiracy to commit burglary conviction as a matter of fact. The court erred in failing to merge the two convictions and erred in sentencing Green on the conviction for possession of tools for the commission of a crime.

*Judgment affirmed as to convictions for possession of cocaine and conspiracy to commit burglary. Judgment reversed and sentence vacated as to conviction for possession of tools for the commission of a crime. Smith and Eldridge, JJ., concur.*

DECIDED OCTOBER 15, 1999.

*Edwards & McLeod, Jennifer McLeod, James M. Money*, for appellant.

*David McDade, District Attorney, James E. Barker, Assistant District Attorney*, for appellee.

---

[25] Compare *Hanifa v. State*, 269 Ga. 797, 798, n. 2 (505 SE2d 731) (1998); *Wells*, supra, 222 Ga. App. at 588-589 (3).